**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMPREHENSIVE LOGISTICS, INC., | ) | Case No. 4:17cv895 |
| | ) | |
| Plaintiff, | ) | DISTRICT JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| VICTORY PROPANE LLC, | ) | |
| | ) | **FIRST SUPPLEMENTAL** |
| Defendant. | ) | **COMPLAINT** |
| | ) | **(VERIFIED)** |
| and | ) | |
| | ) | |
| AMERICAN ARBITRATION ASSOCIATION | ) | |
| (c/o/Corporation Service Company, Registered | ) | |
| Agent of Service), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN/JANE DOES, | ) | |

New Party Defendants.

Plaintiff Comprehensive Logistics, Inc. ("CLI"), for its Complaint against Defendants Victory Propane LLC ("VP"), and the American Arbitration Association ("AAA"), pleads as follows:

**Parties, Jurisdiction and Venue**

1.    CLI is a corporation organized under the laws of the State of Ohio, with its principal place of business in Youngstown, Ohio.  CLI is a leading full-service, third-party logistics provider of high-volume, high-velocity warehouse management, contract manufacturing, and transportation management services, which support just-in-time manufacturing customers.  CLI operates in 25 locations, situated in eight States and Ontario, Canada.  Two such locations are Dearborn, Michigan and Youngstown, Ohio.

2. VP is an Illinois limited liability corporation, organized under the laws of the State of Illinois, whose principal address is 155 Revere Drive, Suite 12, Northbrook, IL 60062. VP's members are Victory Propane Management, LLC and Osterman Propane, LLC, a wholly-owned subsidiary of NGL Partners, LP, a publicly-traded company. Victory Propane Management, LLC's owners are: Eric Falberg of Highwood IL, Gregg Falberg of Highland Park IL, and David Florsheim, who also is believed to be a resident of Illinois.

3. AAA is a not-for-profit, 501(c)(3) organization that provides alternative dispute resolution administration services to entities that contract for its services, including services for arbitrations provided for by commercial agreements between corporations. The AAA's principal place of business is 1633 Broadway, New York, NY 10019-6708.

4. Upon information and belief, John/Jane Does are the employees, agents, and representatives of the AAA and the empaneled arbitrators directed by AAA to handle AAA Case Nos. 01-17-0002-2030 or 01-17-0002-1090. Upon information and belief, John/Jane Does' names and addresses of residences are unknown.

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and because there is more than $75,000 in controversy, exclusive of interest and costs. For purposes of establishing diversity of citizenship jurisdiction, the citizenship of a limited liability corporation is the State or States where its owners reside, and the citizenship of a corporation are both its State of incorporation and the State where its principal place of business is located. CLI is a citizen of the State of Ohio, while VP is a citizen of the States of Illinois and Massachusetts.

6. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the Complaint contains a claim for mail fraud pursuant to 18 U.S.C. § 1341.

7.     This Court also has original jurisdiction over CLI's remaining actions under Ohio law pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.

8.     Venue for this action is proper in this district because: (a) one Sales and Service Agreement ("SSA") at issue was negotiated in the Northern District of Ohio; (b) VP performed delivery and maintenance services for CLI in the Northern District of Ohio; (c) VP otherwise conducted business in the Northern District of Ohio that relates to the subject-matter of this dispute; (d) CLI's Youngstown warehouse was a party to one of the SSAs and has been victimized by VP's fraudulent misconduct in inducing CLI to sign the SSA; and (e) VP's fraudulent performance that damaged the Youngstown warehouse occurred in the Northern District of Ohio.

## Statement of Facts Pertinent to All Claims

9.     On or about February 28, 2017, VP's sales representative, Joseph Vella, and Joshua Morris, the Plant Manager of CLI's Dearborn warehouse, located at 6000 Wyoming, Avenue, Dearborn, MI 48210 ("Dearborn Warehouse") executed a one-page Sales and Service Agreement ("2017 Dearborn SSA").  A copy of the 2017 Dearborn SSA is enclosed and marked as Exhibit 1.

10.     The 2017 Dearborn SSA signed by Morris and Vella covered only one face page, with no notations or terms and conditions on the reverse side.

11.     A few days after Morris and Vella signed the 2017 Dearborn SSA, Vella provided Morris, via regular U.S. Mail, a signed copy of the 2017 Dearborn SSA.  As with the original 2017 Dearborn SSA, the copy received by Morris in the mail covered only the front page, with no terms and conditions on the back.  Exhibit 1 to this Complaint is a true and accurate copy of the 2017 Dearborn SSA that Morris received in the mail.

12.     The 2017 Dearborn SSA received by Morris from Vella purported to have VP rent certain propane gas cylinders and racks to hold the cylinders, and to sell propane gas at an initial price of $7.75/cylinder.

13.     The 2017 Dearborn SSA received by Morris from Vella contained no terms, conditions or procedures for adjusting, either upward or downward, the initial selling prices of propane gas.

14.     Morris and Vella previously had signed another SSA some time in 2016, covering tank/rack rentals and propane gas sales for all of part of 2016. ("2016 Dearborn SSA").  The 2016 Dearborn SSA also covered only the front side of the paper, with no terms and conditions on the back.  A copy of the 2016 Dearborn SSA is enclosed and marked as Exhibit 2.

15.     Before Morris signed the 2016 Dearborn SSA, he informed Vella that he was not authorized to signed a contract on behalf of CLI for a fixed term.  Vella responded that the 2016 Dearborn SSA was terminable by either party at will.  The one-page 2016 Dearborn SSA contains no fixed term or other restrictions upon either party's ability unilaterally to cancel the arrangement.

16.     When Morris and Vella signed the 2016 Dearborn SSA, Vella represented that the unit price of propane gas sales would be fixed for all sales occurring in 2016.  VP did not adjust, upward or downward, the sales price of propane gas for any sales until October, 2016.

17.     When Vella presented Morris with the 2017 Dearborn SSA, he informed and assured Morris that it was the same arrangement as the 2016 Dearborn SSA regarding the absence of any fixed term, the ability of either party to terminate the arrangement at will and the fixed rate for the propone throughout 2017.  Vella further assured Morris that VP would purchase immediately sufficient quantities of propane gas consistent with the unit price contained in the 2017 Dearborn SSA.

4

18.     At all relevant times, Vella possessed either actual or apparent authority to enter into both the 2016 and 2017 Dearborn SSAs and to make representations and assurances regarding the meaning, intent and impact of their terms and conditions.

19.     In fact, VP made no such advance purchases of propane gas from its suppliers. Instead, VP covered its sales to CLI by making purchases as needed from its suppliers based upon market rates that existed.  When the purchase and sale occurred, VP then passed on any price increases to CLI, demanding payment of the increased price.

20.     On or about October 27, 2016, VP raised the unit price of propane from $0.91/gallon to $1.04/gallon.  Effective on March 1, 2017, VP again raised the unit price to $1.26/gallon.   The unit price then fluctuated between $1.24-1.32/gallon until April 6, 2017. Enclosed and marked as Exhibit 3 to this Complaint is a spreadsheet showing all VP propane gas sales to the Dearborn Warehouse between February 23, 2016 and April 6, 2017.  The data on the spreadsheet are based upon actual invoices received from VP and maintained by CLI.

21.     Morris complained to VP about the price.  Enclosed and marked as Exhibit 4 to this Complaint are copies of e-mail communications between Morris and VP that discuss the price increases and CLI's objection to them.  VP informed Morris that the 2017 Dearborn SSA's terms and conditions permitted VP to raise prices unilaterally and without notice and that CLI was obligated to pay these increased prices.

22.     Morris responded by threatening to terminate what had been represented to him as a terminable-at-will arrangement.  VP informed Morris for the first time that the 2017 Dearborn SSA had a five-year duration.

23.     Morris inquired of the basis for this five-year duration, as the one-page 2017 Dearborn SSA that he had received in the mail from VP's authorized sales representative contained no specific, fixed, duration.  VP responded that the 2017 Dearborn SSA actually was a

two-page document that contained a full page of additional terms and conditions on the back page. VP provided Morris with a copy of the back page of the 2017 Dearborn SSA. Enclosed and marked as Exhibit 5 to this Complaint is a copy of the terms and conditions contained on the back page of the 2017 Dearborn SSA.

24.     Morris was never shown the back page terms and conditions when he signed the 2017 Dearborn SSA. These terms and conditions were not explained to him by VP's authorized sales representative when he signed the 2017 Dearborn SSA or at any time thereafter until shortly before VP provided them. VP never provided Morris with a copy of the back page terms and conditions at or around the time that the parties signed the 2017 Dearborn SSA.

25.     Morris never accepted the back page terms and conditions when he signed the 2017 Dearborn SSA, and in fact, he informed VP's authorized sales representative that he was not authorized to accept some of the terms and conditions detailed therein.

26.     Among the terms delineated in the back page terms and conditions that Morris never agreed to are: (a) a fixed five-year term; (b) liquidated damages for premature breach; and (c) binding arbitration of all disputes, including claims by either party for breach of contract.

27.     On April 6, 2017, Morris notified VP that he was terminating the 2017 Dearborn SSA due to VP's improper price increases on propane gas sales and its failure to provide and maintain propane gas cylinders in proper working order.

28.     VP sent Morris a demand for liquidated damages in the amount of $477,046.87. Enclosed and marked as Exhibit 6 to this Complaint is VP's liquidated damages demand.

29.     On or about March 2, 2016, Vella and James Kriner, the Plant Manager of CLI's Youngstown warehouse, located at 375 Victoria Road, Youngstown, OH 44505 ("Youngstown Warehouse") executed a one-page Sales and Service Agreement ("Youngstown SSA"). A copy of the Youngstown SSA is enclosed and marked as Exhibit 7.

30. Preceding the signing of the Youngstown SSA, Kriner and Vella discussed the terms and conditions. Vella informed Kriner that VP would supply propane gas at a fixed rate for a one-year period and that CLI could terminate the arrangement at will.

31. The Youngstown SSA signed by Kriner and Vella covered only one face page, with no notations or terms and conditions on the reverse side.

32. The Youngstown SSA received by Morris from Vella purported to have VP sell propane gas at an initial price of $0.97/gallon. The Youngstown SSA also contained the handwritten notation "price locked 12 months," indicating that VP would not adjust this unit price for one year. The Youngstown SSA also did not provide for any equipment rentals, as dictated by the notation "no rental" under the "Additional Terms" section. Although VP provided cylinders and racks to the Youngstown Warehouse, VP never charged any rent for using that equipment.

33. The Youngstown SSA received by Kriner from Vella contained no terms, conditions or procedures for adjusting, either upward or downward, the initial selling prices of propane gas.

34. Before Kriner signed the Youngstown SSA, he informed Vella that he was not authorized to sign a contract on behalf of CLI for a fixed term. Vella responded that the Youngstown SSA was terminable by either party at will. The one-page Youngstown SSA contains no fixed term or other restrictions upon either party's ability unilaterally to cancel the arrangement.

35. When Kriner and Vella signed the Youngstown SSA, Vella represented that the unit price of propane gas sales would be fixed for all sales occurring during the proceeding twelve months. To memorialize the parties' understanding, the parties' added immediately below the unit price the handwritten notation "Price Locked 12 Months."

36. To further assure Kriner that the Youngstown SSA was not binding upon CLI for a fixed term, the parties added the notations "no fees" and "no rental" in the "Additional Terms" section.

37. At all relevant times, Vella possessed either actual or apparent authority to enter into the Youngstown SSA and to make representations and assurance regarding the meaning, intent and impact of its terms and conditions.

38. On or about July 1, 2016, Kriner notified VP that CLI was terminating the arraignment with VP because CLI had succeeded in obtaining propane gas at a less expensive price.

39. Shortly thereafter, Vella contacted Kriner, and he asked why Kriner had terminated the Youngstown SSA. Kriner responded by reminding Vella that when he signed the Youngstown SSA he stated that he could not sign anything that would bind CLI and that he was exercising CLI's right to terminate the arrangement immediately.

40. Vella than asked if VP could be permitted to match the price offered by the other propane gas supplier and Kriner responded affirmatively. Vella subsequently informed Kriner that VP could not match the price.

41. Kriner then directed Vella to arrange to have VP pick up its equipment. Shortly thereafter, Vella made those arrangements, and VP's equipment was removed.

42. Neither Vella nor any other employee or representative from VP raised any further protests to Kriner's termination of the Youngstown SSA.

43. On or about April 17, 2017, VP filed with the American Arbitration Association ("AAA") a Demand for Arbitration, docketed as Case No. 01-17-0002-2030, alleging that CLI had breached the 2017 Dearborn SSA ("Dearborn Claim"). Enclosed and marked as Exhibit 8 is a copy of the AAA Online Filing Acknowledgement and accompanying documentation for same.

44.     On or about April 12, 2017, VP filed with the AAA a Demand for Arbitration, docketed as Case No. 01-17-0002-1090, alleging that CLI had breached the Youngstown SSA ("Youngstown Claim").  Enclosed and marked as Exhibit 9 is a copy of the AAA Online Filing Acknowledgement and accompanying documentation for same.  VP's Demand for Arbitration included a claim of liquidated damages for $24,990.35.  Enclosed and marked as Exhibit 10 is a copy of VP's liquidated damages demand for the Youngstown Claim.

45.     VP's filing of the Demand for Arbitration for the Youngstown Claim is the first time that CLI received notice that VP challenged Kriner's termination of the Youngstown SSA.

46.     Attached to the Demand for Arbitration was an additional page of terms and conditions that purported to be on the back page of the Youngstown SSA.  The additional page of terms and conditions are included in Exhibit 10 to this Complaint.

47.     VP never showed Kriner the back page terms and conditions when he signed the Youngstown SSA.  These terms and conditions were not explained to him by VP's authorized sales representative when he signed the Youngstown SSA or at any time thereafter until VP provided them in its Demand for Arbitration.  VP never provided Kriner with a copy of the back page terms and condition by VP's authorized sales representative at or around the time that the parties signed the Youngstown SSA.

48.     Kriner never accepted the back page terms and conditions when he signed the Youngstown SSA, and in fact he had informed VP's authorized sales representative that he was not authorized to accept some of the terms and conditions detailed therein.

49.     Among the terms delineated in the back page terms and conditions that Kriner never agreed to are: (a) a fixed one-year term; (b) liquidated damages for premature breach; and (c) binding arbitration of all disputes, including claims by either party for breach of contract.

50. CLI has not agreed to arbitrate either the Dearborn Claim or the Youngstown Claim.

51. On or about April 21, 2017, Kathleen Gossett-Cantrell, Manager of ADR Services for the AAA, notified CLI by letter via electronic mail that the Youngstown Claim had been assigned to her for further administration. Enclosed and marked as Exhibit 11 is a copy of Gossett-Cantrell's letter regarding the Youngstown claim.

52. On or about April 25, 2017, Gossett-Cantrell notified CLI by letter via electronic mail that the Dearborn Claim is being administered under the Expedited Procedures of the Commercial Arbitration Rules. Gossett-Cantrell indicated that the situs of the hearing would be Chicago, Illinois. Enclosed and marked as Exhibit 12 is a copy of Gossett-Cantrell's letter regarding the Dearborn claim.

53. On or about April 28, 2017, CLI submitted a letter to the AAA indicating that CLI objected to AAA's jurisdiction over the dispute between CLI and VP. The letter gave notice to the AAA of CLI's filing of an initial complaint against VP with this Court. The letter also requested that the AAA stay all pending and future arbitration proceedings in these matters until the Court rules on CLI's request for declaratory relief. Enclosed and marked as Exhibit 13 is a copy of CLI's letter to the AAA.

54. On or about May 3, 2017, VP further escalated the dispute by threatening legal action against Youngstown Propane, Inc., ("YPI"), with whom CLI is currently under contract to provide propane for the Youngstown facility. VP indicated that it would hold YPI accountable for allegedly tortiously interfering with its Agreement with CLI. Enclosed and marked as Exhibit 14 is a copy of VP's letter to YPI..

55. On or about May 12, 2017, VP responded to CLI's letter to the AAA and requested a prompt determination from the AAA as to whether the AAA had jurisdiction over

the disputes between CLI and VP. VP's counsel then proceeded to expound upon several court decisions from various jurisdictions and to assert strained interpretations of those cases in support of its contention that the AAA had jurisdiction over the Youngstown claim and Dearborn claim. Enclosed and marked as Exhibit 15 is a copy of VP's letter regarding the AAA.

56. On or about May 12, 2017, counsel for CLI contacted Gossett-Cantrell and AAA via e-mail to indicate that CLI desired an opportunity to respond to the false and misleading statements contained in the letter submitted to the AAA by VP's counsel. CLI's counsel asked Gossett-Cantrell to advise whether AAA's rules permit such a response, and if so, to establish a response deadline. Enclosed and marked as Exhibit 16 is a copy of CLI's e-mail to the AAA requesting the opportunity to respond to VP's arguments.

57. On or about May 15, 2017, Rod Toben, a Vice President for AAA, notified counsel for CLI and VP via electronic mail that the AAA had made an administrative determination that VP had met the filing requirements by filing a demand with an arbitration clause providing for administration by the AAA under its Rules. The notice further indicated that in the absence of an agreement by the parties or a court order staying this matter, the AAA will proceed with the administration of the arbitration. Enclosed and marked as Exhibit 17 is a copy of Mr. Toben's e-mail to counsel for CLI and VP.

58. Despite CLI's request, AAA did not afford CLI any reasonable opportunity to respond to and rebut the inapposite case law and legal conclusions proffered to the AAA by VP in support of its jurisdiction.

## Count I:        28 U.S.C. § 2201 – Declaratory Judgment

59. CLI incorporates by reference each paragraph above as if restated herein.

60. A real and justiciable controversy exists between CLI and VP, concerning whether CLI never agreed to arbitrate any claims under either the 2017 Dearborn SSA or the

11

Youngstown SSA, including VP's breach of contract claims. VP already has invoked the arbitration provisions of the back page terms and conditions by filing Demands for Arbitration.

61.     Pursuant to 28 U.S.C. § 2201, CLI is entitled to declaratory judgment that: (a) CLI is not bound by the back page terms and conditions of either the 2017 Dearborn SSA or the Youngstown SSA because they were not provided when those SSAs were signed; (b) CLI cannot be compelled to arbitrate VP's breach of contract claims because CLI never agreed to arbitrate disputes arising under the SSAs; (c) CLI is entitled to terminate both SSAs, as there was not fixed duration on the terms and conditions provided to it when the SSAs were signed; and (d) the 2017 Dearborn and the Youngstown SSAs are not binding contract due to either VP's fraudulent conduct or a failure of a meeting of the minds among the parties.

## Count II:     Fraud

62.     CLI incorporates by reference each paragraph above as if restated herein.

63.     Upon information and belief, VP instructed its authorized sales representative to assure Morris and Kriner that the SSAs were terminable at will and that VP would provide a fixed price for propane gas purchases.

64.     VP's authorized sales representative made those assurances to Morris and Kriner after both repeatedly had informed VP's authorized representative that they lacked any authority to enter into a contract for a fixed duration.

65.     Morris and Kriner relied upon these assurances and representations of VP's authorized sales representative when they entered into the SSAs. But for those assurances and representations, Morris and Kriner never would have entered into the SSAs.

66.     Upon information and belief, VP never intended to honor these assurances and representations, that it always intended to increase the unit price of propane gas purchases and insist that CLI pay these increased prices.

67.     Upon information and belief, VP instructed its authorized sales representative to present SSAs that contained terms and conditions only on the front page and further instructed its authorized sales representatives not to present the back page terms and conditions at or around when the SSAs were entered into.

68.     Morris and Kriner relied upon assurances and representations when they signed the SSAs that the one-page SSA was the complete agreement between CLI and VP and that the SSAs did not contain any terms and conditions on the back page.  Morris and Kriner never would have entered into the SSAs if they had been presented with additional terms and conditions that provided for a fixed duration, liquidated damages for early termination, and binding arbitration of all disputes.

69.     CLI has been damaged by these misrepresentations made to Morris and Kriner, because: (a) they are now forced to expend substantial resources to defend breach of contract claims based upon fixed-term agreement and liquidated damages for early termination; (b) they now face hundreds of thousands of dollars in potential liquidated damages liability; and (c) they were forced for several months to pay for propane gas sales exceeding the agreed-upon unit price detailed in both the 2016 and 2107 Dearborn SSAs.

## Count III:     Mail Fraud

70.     CLI incorporates by reference each paragraph above as if restated herein.

71.     Shortly after Morris and Vella signed the 2017 Dearborn SSA, VP's authorized sales representative sent to Morris via U.S. Mail a copy of the 2017 Dearborn SSA that contained only the front page, with nothing on the rear page.

72.     In accordance with VP's directions, VP's authorized sales representative sent CLI the 2017 Dearborn SSA via the U.S. Mail without the back page terms and conditions with the intent to deceive CLI as to the actual terms of any agreement between the parties.

73.     VP always intended to enforce the back page terms and conditions of the 2017 Dearborn SSA that VP did not mail to CLI.

74.     The sending via the U.S. Mail by VP's authorized sales representative of the 2017 Dearborn SSA without the back page terms and conditions constitutes mail fraud in violation of 18 U.S.C. § 1341.

WHEREFORE, Plaintiff Comprehensive Logistics, Inc. requests that the Court grant the following relief:

(a)     a judgment on Count I in favor of CLI that: (i) CLI is not bound by the back page terms and conditions of either the 2017 Dearborn SSA or the Youngstown SSA because they were not provided when those SSAs were signed; (ii) CLI cannot be compelled to arbitrate VP's breach of contract claims because CLI never agreed to arbitrate disputes arising under the SSAs; (iii) CLI is entitled to terminate both SSAs, as there was not any fixed duration on the terms and conditions provided to it when the SSAs were signed; and (d) the 2017 Dearborn and the Youngstown SSAs are not binding contract due to either VP's fraudulent conduct or a failure of a meeting of the minds among the parties

(b)     a stay, temporary restraining order ("TRO"), and/or a preliminary injunction of all arbitration proceedings between CLI and VP concerning the Dearborn Claim and the Youngstown Claim until the Court rules upon CLI's request for declaratory relief under Count I;

(c)     all compensatory damages to which CLI is entitled due to VP's fraudulent conduct under Counts II and III, including but not limited to any attorney fees, costs and other resources expended during the arbitration proceedings in defending against the Dearborn Claim and Youngstown claim;

(d)     punitive damages for VP's fraudulent conduct under Counts II and III;

(e)     all reasonable attorney fees and costs to the extent authorized by federal or Ohio law; and

(f)     any other legal and equitable relief that the Court deems just and proper.

Respectfully submitted,

**ZASHIN & RICH CO., L.P.A.**

/s/ *George S. Crisci*
**Stephen S. Zashin (Bar No. 0064557)**
ssz@zrlaw.com

**George S. Crisci (Bar No. 0006325)**
gsc@zrlaw.com
950 Main Ave., 4th Floor
Cleveland, Ohio 44113
Telephone: (216) 696-4441
Fax: (216) 696-1618

and

**Scott H. DeHart (#0095463) -** shd@zrlaw.com
17 S. High Street, Suite 900
Columbus, OH 43215
Telephone: (614) 224-4411
Fax: (614) 224-4433

**Attorneys for Plaintiff**
**Comprehensive Logistics, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 24, 2017 the foregoing was filed using the Court's CM/ECF system. A copy of the foregoing was served on May 24, 2017 via electronic and regular U.S. mail to:

      Glenn Udell
            GUdell@bupdlaw.com
      Shelley Smith
            SSmith@bupdlaw.com
      Sarah Steinhauer
            SSteinhauer@bupdlaw.com
      Katrina Cromwell
            KCromwell@bupdlaw.com
      Brown, Udell, Pomerantz & Delrahim, LTD.
      225 West Illinois Street, Suite 300
      Chicago, Illinois 60654

                       /s/ *George S. Crisci*
                       **George S. Crisci (#0006325)**
                       ***Attorneys for Plaintiff,***
                       ***Comprehensive Logistics Inc.***